The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.



Russ Kendig
United States Bankruptcy Judge

Dated: 01:45 PM April 23, 2015

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ANNIE MARIE PATRICK, | ) | CASE NO. 13-61661 |
| | ) | |
| Debtor. | ) | ADV. NO. 13-6103 |
| ______________________________ | ) | |
| | ) | JUDGE RUSS KENDIG |
| ANNIE MARIE PATRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDOM OF OPINION (NOT** |
| | ) | **INTENDED FOR PUBLICATION)** |
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Currently before the court is the accuracy of CitiMortgage, Inc.'s ("CitiMortgage") calculation of Annie Marie Patrick's ("Debtor") monthly mortgage payments. Around April of 2013, Debtor and CitiMortgage entered into an agreement that lowered Debtor's monthly mortgage payments from $816.97 to $519.78 in accordance with the Home Affordable Modification Program ("HAMP"). However, Debtor is unsatisfied with the terms of her mortgage modification and filed a complaint against CitiMortgage. Debtor and CitiMortgage filed competing motions for summary judgment, and after extensive briefing, the court took the matter under advisement. In an opinion dated December 22, 2014 ("2014 Opinion"), the court dismissed all but one of Debtor's claims, leaving open Debtor's state law breach of contract action. The court also determined that the then available briefing did not adequately address

CitiMortgage's calculation of Debtor's monthly mortgage payment, and ordered additional briefing restricted solely to that issue. Debtor and CitiMortgage have submitted the requested additional briefing, and the matter is before the court.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. As fully outlined in the 2014 Opinion, the court will submit its proposed findings of fact and conclusions of law to the district court. Patrick v. CitiMortgage, Inc. (In re Patrick), 2014 WL 7338929, at *3–7 (Bankr. N.D. Ohio 2014).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## Facts

Debtor initially filed for chapter 7 bankruptcy protection under the United States Bankruptcy Code ("the Code") on June 27, 2013. Debtor's main liability is a mortgage on real property located in Wooster, Ohio (the "Wooster Property"). Debtor and her husband purchased the Wooster Property in 1970. Debtor's husband became ill and passed away in August of 2012, and the combination of a reduction in income and large medical bills caused Debtor to fall behind on her mortgage. According to Debtor's bankruptcy petition, the Wooster Property has a market value of $46,000.00 and an associated mortgage of $96,000.00, but Debtor nevertheless wishes to retain the property. To further this end, Debtor contracted CitiMortgage and the two parties began working towards a mortgage modification. After numerous communications, and following Debtor's successful completion of three trial period mortgage payments, CitiMortgage offered, and Debtor accepted, a permanent home loan modification on the Wooster Property (the "Modification Agreement").

The Modification Agreement lowed Debtor's monthly mortgage payments from $816.97 to $519.78. Even after this reduction, Debtor nevertheless contends that HAMP requires CitiMortgage to offer a lower monthly payment. According to Debtor, HAMP regulations were incorporated into the Modification Agreement, making any HAMP deviation a state law breach of contract. Specifically, Debtor believes HAMP imposes a monthly payment cap of 31% of a borrower's applicable monthly income, and that CitiMortgage has violated this cap. Debtor also argues that CitiMortgage improperly calculated and amortized her mortgage escrow payments. CitiMortgage disagrees, arguing instead that its calculation of Debtor's monthly payment is in compliance with all HAMP requirements.[1]

## Law & Analysis

Before discussing the mortgage payment calculation, the court will address Plaintiff's motion to compel filed on July 22, 2014. Plaintiff initially alleged Defendant did not adequately respond to interrogatories seven, eight, ten, eleven, twelve, thirteen and fourteen. The requests mainly related to the mortgage modification, specifically the methodology and procedures

[1] A more complete timeline from Debtor's initial communications with CitiMortgage to the signing of the Modification Agreement can be found in the court's previous opinion. In re Patrick, 2014 WL 7338929.

utilized in calculating Plaintiff's payments. In the motion, Plaintiff acknowledged that Defendant made a supplemental disclosure and stated "[t]he crucial remaining issues, then, pertain to the interrogatories as to the application of HAMP methodology to Plaintiff's modification, particularly, Interrogatory Numbers 11 (identification of income evaluation performed on Plaintiff's application); 12 (identification of basis for excluding escrow payment from 31% cap); and 14 (NPV evaluation performed for Plaintiff—or basis for not performing one)." (Pl.'s M. Compel at 3, ECF No. 30) Defendant filed a response and again supplemented its requests. In her reply, Plaintiff admits supplement discovery eliminated additional issues but did not specifically identify what remained.

In its Memorandum of Opinion dated December 22, 2014, the court addressed the discovery issues and concluded that (1) Defendant could not withhold any information as irrelevant based on its position that HAMP does not create a private cause of action and (2) ordered CitiMortgage to produce a privilege log for documents withheld as privileged. Thereafter, CitiMortgage provided additional discovery to Plaintiff, filed a privilege log, and submitted documents to the court for an in camera inspection.

After reviewing the documents, the court finds that they are irrelevant to the narrow issue before the court. The documents contained in the privilege log are dated from September 5, 2012 through December 31, 2013. According to CitiMortgage, it produced all documents bearing dates between September 5, 2012 and May 15, 2013 to Plaintiff with only minor redaction. The modification was signed by Plaintiff on March 12, 2013 and by CitiMortgage on April 2, 2013 (Pl.'s Exhibits in Supp. of M. Summ. Judg., Ex. 30, ECF No. 41). Since the calculations were necessarily completed prior to the modification, and Defendant produced those records to Plaintiff, the remaining documents in the privilege log are not relevant to the calculations contained in the modification. Therefore, the court need not consider whether CitiMortgage is entitled to its asserted privileges.

Congress enacted the Emergency Economic Stabilization Act of 2008 in direct response to the "Great Recession," and one portion of that act granted the Secretary of the United States Treasury the ability to create programs to help homeowners who were falling behind on their mortgage payments. In re Patrick, 2014 WL 7338929, at *7. HAMP was one such program. As part of HAMP, the Secretary of the Treasury created numerous rules to guide both borrowers and lenders through the loan modification process. Id. However, a borrower's ability to enforce HAMP against a lender has been the subject of numerous court opinions. See, e.g., Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 555 (7th Cir. 2012); Huffman v. Bank of Am., N.A., 2012 WL 5877512, at *2 (S.D. Ohio 2012); In re Patrick, 2014 WL 7338929, at *8–10. In accordance with the majority of courts, the 2014 Opinion determined that HAMP does not create a private right of action. In re Patrick, 2014 WL 7338929, at *8. However, the court also decided that the incorporation of HAMP into a validly executed contract may give rise to liability under a state law breach of contract theory. Id. at *9–10. Therefore, the court must decide if CitiMortgage's calculation of Debtor's monthly mortgage payment complies with HAMP.

Central to the current dispute are the Freddie Mac Single Family guidelines, and specifically Chapter C65 (the "HAMP Regulations"), which outline the "[s]ervicing requirements in connection with the federal government Home Affordable Modification

Program."[2] In both Debtor and CitiMortgage's legal briefs, various portions of the HAMP Regulations are cited. However, Debtor's brief appears to make an objection to the incorporation of the HAMP Regulations. See Pl.'s Mem. Pertaining to Def.'s Calculation of HAMP Monthly Payment Amount 3, ECF No. 69. Even if Debtor has objected to the HAMP Regulations, courts are able, and often do, take judicial notice of federal statutes and regulations. Federal Rule of Evidence 201; Northville Downs v. Granholm, 622 F.3d 579, 586 (6th Cir. 2010); Redmond v. The Jockey Club, 244 Fed. A'ppx 663, 671 (6th Cir. 2007). Courts have also taken judicial notice of the HAMP regulations at issue in the current case. Fed. Home Loan Mortg. Corp. v. Am. Home Mortg. Corp., 2007 WL 2228619, at *1 n.2 (N.D. Tex. 2007). The court will look to the HAMP Regulations when determining if CitiMortgage's calculation of Debtor's monthly mortgage payment was appropriate.[3]

Debtor identifies two areas where CitiMortgage's calculation of Debtor's monthly mortgage payment failed to comply with the HAMP Regulations. First, Debtor argues that the HAMP Regulations require a homeowner's monthly mortgage payments to be less than 31% of his or her monthly gross income, but Debtor calculates her monthly mortgage payments at 31.4% of her monthly gross income. While this difference is small, Debtor argues that it caused significant hardship. Second, Debtor believes that her mortgage escrow payments and mortgage arrears were improperly calculated and amortized, resulting in continuing increases in her monthly mortgage payment, culminating in a current monthly mortgage payment of $586.90, which is well over the 31% cap. In response, CitiMortgage argues that its calculation of Debtor's monthly mortgage payments are in compliance with HAMP. Therefore, CitiMortgage has not breached the Modification Agreement and is entitled to summary judgment even if the HAMP Regulations are incorporated into the Modification Agreement.

## I. Summary Judgment Standard

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(a); Muncie Power Prods., Inc. v. United Techs. Auto., Inc., 328 F.3d 870, 873 (6th Cir. 2003). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). When one party's motion for summary judgment is based on competent evidence, the opposing party must provide "specific facts showing that there is a genuine issue for trial." Mourad v. Howeward Residential, Inc., 517 Fed. A'ppx 360, 366 (6th Cir. 2013) (quoting Liberty Lobby, 477 U.S. at 250). The court does not have the responsibility to search the record for pertinent facts and legal arguments, but instead should only consider the evidence submitted by the parties and brought to the court's attention. In re McIntire, 2008 WL 1771861, at *2 (Bankr. E.D. Tenn. 2008).

[2] The HAMP Regulations are a publicly available set of documents available on Freddie Mac's website. Freddie Mac, Single-Family Seller/Servicer Guide, available at http://www.freddiemac.com/singlefamily/guide/. All references within this opinion to Chapter C65 are to the HAMP Regulations.

[3] While the 2014 Opinion also dealt with the disclosure of documents CitiMortgage claims are privileged, the evidentiary basis for the current opinion is available to both parties.

When both parties have filed competing motions for summary judgment, the court should review each motion independently to determine if either party is entitled to summary judgment. Nw. Mut. Life Ins. Co. v. Rafi, 2010 WL 4181021, at *4 (N.D. Ohio 2012). Because Debtor's surviving claim is based on the incorporation of the HAMP Regulations into the Modification Agreement, the court will assume, for the purposes of the foregoing analysis only, that the HAMP Regulations were incorporated into the Modification Agreement. Therefore, any violation of the HAMP Regulations may support Debtor's state law breach of contract action.

## II. CitiMortgage Did Not Breach the Modification Agreement

An Ohio breach of contract claim contains four elements: "(1) the existence of a binding contract; (2) that the nonbreaching party performed its contractual obligations; (3) the other party failed to fulfill its contractual obligations without legal excuse; and (4) the nonbreaching party suffered damages as a result of the breach." Nachar v. PNC Bank, Nat'l Ass'n, 901 F.Supp.2d 1012, 1018 (N.D. Ohio 2012). All parties agree that a binding contract exists, satisfying the first element. CitiMortgage has not argued that Debtor breached the Modification Agreement. Therefore, only the third and fourth elements are currently before the court. A showing that CitiMortgage improperly calculated Debtor's mortgage payments under the Modification Agreement would satisfy the third element, and any difference between the proper and improper payment would create damages.

### a. CitiMortgage Properly Calculated Debtor's Monthly Mortgage Payment

At the heart of the current dispute is the proper calculation of Debtor's monthly mortgage payment under the HAMP Regulations, which includes inquiry into a borrower's monthly income and mortgage related expenses. The court will first analyze Debtor's gross income, which "includes all taxable and non-taxable wage income." Chapter C65.18(c). However, if income is non-taxable, the bank "must multiply the amount of the non-taxable income by 1.25; [but] if the actual amount of federal or State taxes that would be paid is more than 25% of the [b]orrower's nontaxable income, the [bank] may use the actual percentage." Id. Multiplying a debtor's non-taxable income by 1.25 is referred to as a "gross up," and is intended to equalize taxable and nontaxable income. Initially, a dispute existed between Debtor and CitiMortgage regarding Debtor's gross income under the HAMP Regulations, and whether the "gross up" was applicable. Debtor's income is from Social Security, which is generally nontaxable, and the parties now agree that Debtor's Social Security income is subject to the 1.25 "gross up." Debtor's Social Security income is $1,325.90, and after multiplying by 1.25, Debtor's gross monthly income under the HAMP Regulations is $1,657.38.

According to the Chapter C65.1, a bank's objective "it to achieve a Target Payment based upon a monthly housing expense-to-income ratio that is as close as possible, but no less than 31% of the [borrower's] gross monthly income." Chapter C65.1 of the HAMP Regulations defines the "Target Payment" as the "[m]onthly PITAS Payment that achieves a monthly housing-expense-to-income ratio that is as close as possible to, but no less than, 31% of the [Debtor's] gross monthly income." (emphasis added). Further, within the HAMP Regulations glossary, a home owner's PITAS Payment shall include the following expenses:

- A modified monthly principal and interest payment
- Monthly pro rata amount for real estate taxes, plus applicable monthly Escrow cushion
- Monthly pro rata amount for property and flood insurance, if applicable, plus applicable monthly Escrow cushion
- Monthly pro rata amount of homeowner's association dues, Condominium Unit or cooperative unit maintenance fees, and ground rent, as applicable, and
- If applicable, the Projected Monthly Escrow Shortage Payment, if any

The "Target Payment" requires a borrower's monthly payment to be "as close as possible, *but no less* than 31% of the [borrower's] gross monthly income." Chapter C65.1 (emphasis added). As Debtor's gross income is $1,657.38, and 31% is $513.79, CitiMortgage's calculation of Debtor's monthly mortgage payment under the HAMP Regulations should be very close to $513.79, but slightly above it. Debtor's initial monthly payment under the Modification Agreement was $519.78, or only $5.99 over the Target Payment. Debtor attempts to describe the 31% Target Payment as a borrower's monthly payment "cap," but the HAMP Regulations make 31% a payment floor. As the HAMP Regulations require a Target Payment that is "as close as possible, but not less than, 31% of [Debtor's] gross monthly income," a payment equaling 31.36% of a borrower's gross income satisfies such a standard.

**b. CitiMortgage Properly Calculated Debtor's Arrearage and Escrow Payments**

Debtor also points to alleged errors in CitiMortgage's calculation of Debtor's monthly escrow payments. Debtor's principal argument is that any escrow arrearage should be capitalized into the loan balance and paid over the remaining life of the loan. However, CitiMortgage only spread Debtor's escrow arrearage over sixty months, resulting in monthly mortgage payments above the Target Payment. CitiMortgage argues that its treatment of Debtor's escrow arrearage is in accordance with the HAMP Regulations.

Chapter C65.6(d) addresses a lender's treatment of escrow related issues. Any escrow related payments that were due *before* the signing of the Modification Agreement must be capitalized and paid over the life of the modified mortgage. However, property taxes and insurance payments that are not yet due as of a modification agreement's effective date, but are needed to pay future tax and insurance amounts (referred to by the HAMP Regulations as an "escrow shortage") must either be paid in one lump sum or amortized over sixty months. CitiMortgage calculated Debtor's escrow shortage, spread it equally over a sixty-month period, and included the amount within Debtor's Target Payment, which as noted above, was 31.36% of Debtor's monthly gross income. The Modification Agreement also notes that escrow payments may vary based on changes in property taxes or insurances rates. Debtor does not address C65.6(d), and instead only makes a blanket assertion that CitiMortgage improperly distributed any escrow shortage over sixty months. Such broad statements are insufficient to survive summary judgment. See Mourad, 517 Fed. A'ppx at 366.

While not stated in Debtor's brief, CitiMortgage believes Debtor is truly unhappy with payments required for private mortgage insurance ("PMI"). PMI is an insurance program that protects a lender when a borrower makes a down payment under 20% of a property's purchase price. In the current case, Debtor's monthly PMI payment is $65.64 and was determined in advance of, and was not affected by, the Modification Agreement. Any monthly PMI payment is not included when arriving at a Target Payment. Chapter C65.6(b). Therefore, while monthly PMI payments may cause Debtor's total monthly mortgage payments to be significantly larger than the Target Payment, such an outcome is required under the HAMP Regulations.[4]

Debtor makes a number of additional allegations relating to her escrow payments that the court previously disposed of in the 2014 Opinion. First, Debtor states that the "escrow arrearage arose out of [CitiMortgage's] erroneous payment of premiums for duplicate hazard insurance out of [Debtor's] escrow account. Pl.'s Mem. 3. The 2014 Opinion determined that any duplicative hazard insurance payments were attributable to Debtor, not CitiMortgage. In re Patrick, 2014 WL 7338929, at *14–15. Debtor also states that CitiMortgage's failure to correct its escrow miscalculation caused a breach of the duty of good faith and fair dealing. Pl.'s Mem. 3. However, Debtor failed to allege any CitiMortgage action that could not have been anticipated when executing the Modification Agreement, causing Debtor's claim to fail as a matter of law. In re Patrick, 2014 WL 7338929, at *15–16. Finally, Debtor alleges that information requests sent to CitiMortgage went unanswered, causing significant harm. Pl.'s Mem. 2–3. Debtor's written information requests were mailed to an improper address, making CitiMortgage's failure to respond not a legally sanctionable action. In re Patrick, 2014 WL 7338929, at *19–21. These three arguments were previously decided, and the 2014 Opinion clearly limited the scope of the current opinion to CitiMortgage's calculation of Debtor's monthly mortgage payments.

## Conclusion

Based on the foregoing analysis, even assuming that the Modification Agreement incorporates the HAMP Regulations, CitiMortgage properly calculated Debtor's monthly mortgage payment. Therefore, Debtor has not adequately alleged a breach of the Modification Agreement, failing an element required for an Ohio breach of contract claim. For the foregoing reasons, and for the reasoning within the 2014 Opinion, the court recommends that summary judgment be granted in favor of CitiMortgage on all counts.

The court submits these proposed findings of fact and conclusions of law to the United States District Court.

# # #

**Service List**:

[4] When including monthly PMI payments, Debtor's monthly mortgage payments under the Modification Agreement are $586.90. However, after removing PMI payments, Debtor's monthly mortgage payments remain very close to the 31% Target Payment.

**Annie Marie Patrick**
9574 Ashland Road
Wooster, OH 44691

**Thomas Karl Mast**
111 South Buckeye Street
Suite 240
Wooster, OH 44691

**Nathan H. Blaske**
Graydon Head & Ritchey LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, OH 45202